UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CARLITA S. PADRÓ,

                       Plaintiff,

       -against-

CITIBANK, N.A.,

                       Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-2986 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pro se Plaintiff Carlita S. Padró brings this employment discrimination action against Defendant Citibank, N.A. pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, et seq., and the Age Discrimination in Employment Act of 1967 (the "ADEA"), as amended, 29 U.S.C. §§ 621, et seq. Plaintiff alleges that she was discriminated against on the basis of race, gender, and national origin. Before the court is Defendant's motion to compel arbitration pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1, et seq., and to dismiss the case. (Not. of Mot. to Compel Arbitration & to Dismiss the Action ("Mot.") (Dkt. 14).) For the reasons set forth below, Defendant's motion is GRANTED.

I.    **BACKGROUND**

    A.    **Factual and Procedural History**

Plaintiff alleges that she began working for Defendant on October 3, 1980, and remained employed by Defendant until she was terminated on February 5, 2013. (See Compl. (Dkt. 1), Ex. A ¶¶ 2, 19.) On May 12, 2014, Plaintiff commenced this employment discrimination action against Defendant, pursuant to Title VII and the ADEA. (Compl. at 1.) Plaintiff, who is a 55-year-old Hispanic woman born in the Dominican Republic, alleges that she was discriminated

1

against in the terms and conditions of her employment beginning in 2006, and up through her alleged wrongful termination. (Compl., Ex. A ¶¶ 1, 4-21.)

On October 23, 2014, in accordance with the court's Individual Rules, Defendant filed its fully briefed motion to compel arbitration, arguing that Plaintiff's claims are subject to a binding arbitration agreement. (E.g., Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. 15) at 5-7.) On November 3, 2014, the court received a supplemental letter from Plaintiff dated October 30, 2014, in which Plaintiff claims that she does not recall signing any arbitration agreement. (Pl.'s Oct. 30, 2014, Ltr. (Dkt. 20).)[1] Subsequently, the court granted Defendant leave to file a brief response to Plaintiff's October 30, 2014, letter (Nov. 10, 2014, Order (Dkt. 22)); Defendant filed a response on November 14, 2014 (Def.'s Sur-Reply Mem. of Law in Supp. of Mot. (Dkt. 24)).

B.  **The Agreements**

In support of its motion, Defendant submitted several versions of Defendant's Employee Handbook, receipt of each of which is acknowledged by print or electronic signature by Plaintiff. The first is a copy of Citigroup's U.S. Consumer Group[2] 2004 Employee Handbook ("2004 Handbook"), which contains an "Employment Arbitration Policy," stating:

> This policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual, or common-law rights) that may arise between an employee or former employee and U.S. Consumer Group or its current and former parents, subsidiaries, and affiliates and its and their current and former officers, directors, employees, and agents (and that aren't resolved by the internal Dispute Resolution Procedure) including, without

---

[1] In the letter, Plaintiff also moved to compel production of documents that Defendant had referenced in its motion. (Pl.'s Oct. 30, 2014, Ltr.) The court denied Plaintiff's motion to compel, as Plaintiff had already been served with a copy of the documents when Defendant filed its motion. (Nov. 11, 2014, Order (Dkt. 23).)

[2] U.S. Consumer Group, which is a member of Citigroup, is an umbrella for numerous Citi subsidiaries. (See Decl. of Kevin G. Lauri ("Lauri Decl."), Ex. B (Dkt. 16-1) at ECF page 4.)

2

> limitation, claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, and all amendments thereto, and any other federal, state, or local statute, regulation, or common-law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation.

(Decl. of Kevin G. Lauri ("Lauri Decl."), Ex. B (Dkt. 16-1) at ECF page 7.) Additionally, the first page of the 2004 Handbook alerts employees to the Employment Arbitration Policy, stating in bold and italicized font:

> ***Important: This Handbook contains a policy that requires you to submit employment-related disputes to binding arbitration (see page 35). Please read the policy carefully. No provision in this Handbook or elsewhere is intended to constitute a waiver, or be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.***

(Id. at ECF page 5 (emphasis in original).) On March 29, 2004, Plaintiff signed an acknowledgment form, affirming that she carefully read the 2004 Handbook and that

> I understand that this Handbook contains a policy that requires me to submit employment-related disputes to binding arbitration (see page 35). I have read that policy carefully. I also understand that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.

(Lauri Decl., Ex. A (Dkt. 16-1) at ECF page 2.)

Defendant also submitted as evidence three subsequent versions of its Employee Handbook. The U.S. Consumer Group 2006 Employee Handbook ("2006 Handbook") contains nearly identical language to the 2004 Handbook and similarly alerts employees to the arbitration

policy on the first page in bold, italicized text. (See Lauri Decl., Ex. D (Dkt. 16-1) at ECF pages 16, 18.) On February 15, 2006, Plaintiff signed an acknowledgment form for the 2006 Handbook, which is nearly identical to the form she signed in 2004. (See Lauri Decl., Ex. C (Dkt. 16-1) at ECF page 13.) Plaintiff also signed a Principles of Employment Form on February 15, 2006, agreeing "to follow our dispute resolution/arbitration procedures for employment disputes" including claims brought pursuant to Title VII and the ADEA, and acknowledging that it was her "responsibility to read and understand these policies and expectations." (Lauri Decl., Ex. E (Dkt. 16-1) at ECF page 24; see also id. (acknowledging "responsibility to read and understand the dispute resolution/arbitration procedures").)

In 2009, Defendant implemented an updated U.S. Employee Handbook ("2009 Handbook"), which contains an Employment Arbitration Policy nearly identical to those in the 2004 Handbook and 2006 Handbook. (See Lauri Decl., Ex. F (Dkt. 16-1) at ECF page 31.) The 2009 Handbook's introduction again alerts employees to the Employment Arbitration Policy in enlarged, emphasized text. (See id. at ECF page 30.) On January 6, 2009, Plaintiff electronically acknowledged receipt of the 2009 Handbook and its arbitration policy which "require you to submit employment-related disputes to binding arbitration," and she accepted an "obligation to read these documents carefully." (Lauri Decl., Ex. G (Dkt. 16-1) at ECF page 37.)

In 2011, Defendant implemented another updated U.S. Employee Handbook ("2011 Handbook"). The 2011 Handbook contains an Employment Arbitration Policy that is again nearly identical to those in the 2004, 2006, and 2009 Handbooks, and also alerts employees to the policy in emphasized text in the introduction. (See Lauri Decl., Ex. H (Dkt. 16-1) at ECF pages 43-44.) On March 16, 2011, Plaintiff electronically acknowledged receipt of the 2011

Handbook and the arbitration policy which required her to submit employment-related disputes to arbitration, and she affirmed her obligation to review those documents carefully. (See Lauri Decl., Ex. I (Dkt. 16-1) at ECF page 50.) The Acknowledgment Receipt states:

> Appended to the Handbook is an Employment Arbitration Policy as well as the "Principles of Employment" that require you to subject employment-related disputes to binding arbitration (See Appendix A and Appendix D). You understand that it is your obligation to read these documents carefully, and that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver of Citi's right to compel arbitration of employment-related disputes.

(Id.)

Defendant asserts that the 2011 Handbook was the operative employee handbook at the time of Plaintiff's termination on February 5, 2013. (Def.'s Mem. at 3.) Plaintiff does not deny this, nor does she deny signing documents acknowledging and agreeing to the 2011 Handbook's policies. In her opposition memorandum, Plaintiff does not mention any employee handbooks, arbitration policies, or contracts with Defendant. (See Pl.'s Rebuttal ("Opp'n") (Dkt. 18).)[3] In her October 30, 2014, supplemental letter to the court, Plaintiff asserts, "I do not recall signing such [arbitration-related] documents." (Pl.'s Oct. 30, 2014, Ltr.)

## II. DISCUSSION

### A. Legal Standard

Defendants move pursuant to the FAA to compel arbitration of all claims asserted in Plaintiff's Complaint.[4] Under Section 4 of the FAA, a party "aggrieved by the alleged failure,

---

[3] Plaintiff's opposition memorandum, filed by Defendant in accordance with this court's bundling rule, is missing its third page. (See Opp'n at 3.) A complete version of this document, including the missing page, is attached to a letter from Plaintiff to the court dated October 15, 2014. (See Pl.'s Oct. 15, 2014, Ltr., Attach. 1 (Dkt. 12-1).)

[4] The FAA empowers district courts to compel arbitration, but only where the court has an independent basis for maintaining jurisdiction. See Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012). Here, where Plaintiff alleges claims under Title VII and the ADEA, the court has subject matter

5

neglect, or refusal of another to arbitrate under a written agreement for arbitration" may file a motion to compel, which a court must grant "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4; see also, e.g., AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011).

Thus, a motion to compel arbitration requires the court to address two issues: (1) whether the parties have entered into a valid agreement to arbitrate; and (2) if so, whether the dispute at issue falls within the scope of the parties' agreement to arbitrate. See In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011); see also Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." (emphasis in original)). While the FAA establishes a "'liberal federal policy favoring arbitration agreements,'" see, e.g., CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669 (2012) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)), "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit,'" Am. Express Fin. Advisors, 672 F.3d at 127 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)); see also Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2309 (2013) (noting that "courts must rigorously enforce arbitration agreements according to their terms" (internal quotation marks and citation omitted)).

The first question—whether the parties have agreed to arbitrate in the first place—"is one only a court can answer, since in the absence of any arbitration agreement at all, questions of

---

jurisdiction pursuant to 28 U.S.C. § 1331. See, e.g., McNulty v. N.Y.C. Dep't of Fin., 45 F. Supp. 2d 296, 298 (S.D.N.Y. 1999).

6

arbitrability could hardly have been clearly and unmistakably given over to an arbitrator." VRG Linhas Aereas S.A. v. Matlin Patterson Global Opportunities Partners II L.P., 717 F.3d 322, 325 n.2 (2d Cir. 2013) (internal quotation marks omitted). In evaluating the second question—whether the scope of the agreement to arbitrate covers the dispute at issue—"[c]ourts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability.'" BG Grp., PLC v. Republic of Argentina, 134 S. Ct. 1198, 1206 (2014). Thus, unless the parties have "clearly and unmistakably" delegated to an arbitrator the authority to resolve issues of arbitrability, Howsam, 537 U.S. at 83, "the question of whether or not a dispute is arbitrable is [also] one for the court." Citigroup Global Mkts. Inc. v. Abbar, 761 F.3d 268, 274 (2d Cir. 2014) (internal quotation marks and citation omitted). Where courts have the authority to make this determination, the federal policy in favor of arbitration "requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 406 (2d Cir. 2009) (internal quotation marks and citation omitted).

In deciding a motion to compel arbitration, the court applies a standard similar to that applicable to a motion for summary judgment. Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); see also Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 172 (2d Cir. 2011) ("If there is a genuinely disputed factual issue whose resolution is essential to the determination of the applicability of an arbitration provision, a trial as to that issue will be necessary; but where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" (quoting Bensadoun, 316 F.3d at 175)). As a result, allegations related to arbitrability are evaluated to determine "whether they raise a genuine issue of material fact that must be resolved by a fact-

7

finder at trial." Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012). In addition, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000); see also Whitehaven S.F., LLC v. Spangler, 45 F. Supp. 3d 333 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense." (internal quotation marks and citation omitted)).

**B. Discussion**

1. <u>Agreement to Arbitrate</u>

There is no dispute of fact regarding the parties' entry into an arbitration agreement. Plaintiff agreed to Defendant's Employee Arbitration Policy in five separate documents in 2004, 2006, 2009, and most recently, 2011. (See Lauri Decl., Exs. A, C, E, G, I.) Defendant contends, and Plaintiff does not dispute, that the 2011 Handbook was the operative handbook at the time of Plaintiff's termination, and Plaintiff clearly bound herself to the policies therein when she electronically signed the "2011 U.S. Employee Handbook Acknowledgment Receipt" on March 16, 2011. (See Lauri Decl., Ex. I.) As explained above, supra Part I.B, Plaintiff acknowledged receipt of the 2011 Handbook and the Employment Arbitration Policy, and undertook an obligation to review the documents carefully. (Id.) Plaintiff's electronic acknowledgment serves as presumptive evidence that an agreement to arbitrate was formed. See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts

8

a written contract . . . is conclusively presumed to know its contents and to assent to them." (internal quotation marks and citation omitted)).

Plaintiff does not contest that she signed documents acknowledging the Employment Arbitration Policy. However, even if Plaintiff had not done so, by continuing to work for Defendant after receiving notice of the Employment Arbitration Policy, Plaintiff manifested assent to arbitration in accordance with the policy. See, e.g., Thomas v. Pub. Storage, Inc., 957 F. Supp. 2d 496, 499 n.2 (S.D.N.Y. 2013) ("'New York, unlike other jurisdictions, has found that continued employment, without more, is sufficient to manifest assent to arbitration where an employee received documents that contain such information, continued with her employment, and did not opt out of arbitration.'" (quoting Manigault v. Macy's E., LLC, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order))). In fact, the Employment Arbitration Policy in the 2011 Handbook expressly states that "your acceptance of or continued employment with Citi, shall constitute consideration for your rights and obligations under this Policy." (Lauri Decl., Ex. H at ECF page 44.) Accordingly, Plaintiff's continued employment with Defendant buttresses the existence of an arbitration agreement between the parties.

Plaintiff alleges no facts disputing the existence of an agreement to arbitrate. In a letter to the court, she asserts that she does not recall having signed any arbitration-related documents. (Pl.'s Oct. 30, 2014, Ltr.) But whether or not she remembers doing so, Plaintiff is nonetheless bound by the arbitration agreements that she signed, as she does not dispute that the manual or electronic signatures on the documents are genuine. Parties are charged with knowing and understanding the terms of written agreements to which they assent. See Gold, 365 F.3d at 149-50 ("[A] party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them. . . . [W]e cannot accept a rule that would allow a party to avoid

9

his legal obligation to read a document carefully before signing it just because the document is an arbitration agreement under which Title VII claims could be arbitrated." (internal quotation marks and citation omitted)). If Plaintiff did not understand the Employment Arbitration Policy or the documents acknowledging the policy, it was her responsibility to seek assistance. See id. ("[I]f [plaintiff] did not understand the form or had questions about the arbitration clause or the rules . . . the burden was on him to have his concerns addressed before signing the [agreement] . . . ."). Accordingly, it is not relevant, for purposes of this motion, whether Plaintiff recalls signing documents acknowledging the Employment Arbitration Policy, or whether she subjectively understood at the time the contents thereof. It is undisputed that the parties did enter into a valid agreement to arbitrate.

    2.    Scope of the Arbitration Clause

In determining whether a particular dispute falls within the scope of an arbitration agreement, the Second Circuit looks to whether the agreement is broad or narrow, and has provided district courts with clear guidance:

> To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry. First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. See Mehler v. Terminix Int'l Co., 205 F.3d 44, 49 (2d Cir. 2000); Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One, 903 F.2d 924, 927 (2d Cir. 1990); McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988). Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that "is on its face within the purview of the clause," or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Rochdale Vill., Inc. v. Pub. Serv. Employees Union, 605 F.2d 1290, 1295 (2d Cir. 1979); see also Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 64 (2d Cir. 1983). Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. See Cornell Univ. v. UAW Local 2300, 942 F.2d 138, 140 (2d Cir. 1991). Where the

arbitration clause is broad, "there arises a presumption of arbitrability" and arbitration of even a collateral matter will be ordered if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under it." Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995).

Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001). Here, the court need not determine whether the language of the parties' agreement creates a broad, expansive agreement or a narrow, limited one; either way, the arbitration agreement plainly applies to the controversy at issue. Even were it given a narrow interpretation, the Employment Arbitration Policy from the 2011 Handbook expressly includes disputes that arise under both Title VII and the ADEA:

> This Policy makes arbitration the required and exclusive forum for the resolution of all disputes (other than disputes which by statute are not arbitrable) arising out of or in any way related to employment based on legally protected rights (i.e., statutory, regulatory contractual, or common-law rights) that may arise between an employee or former employee and Citi, its predecessors, successors, and assigns, its current and former officers, directors, employees, and agents (and that aren't resolved by the internal Dispute Resolution Procedure) including, without limitation, claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, and all amendments thereto, and any other federal, state, or local statute, regulation, or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, breach of contract, defamation, retaliation, whistle-blowing, or any claims arising under the Citigroup Separation Pay Plan.

(Lauri Decl., Ex. H at ECF page 44 (emphases added).) Accordingly, the Employment Arbitration Policy explicitly encompasses Plaintiff's employment discrimination action brought pursuant to Title VII and the ADEA; Plaintiff's claims fall squarely within its scope.

## III. CONCLUSION

For the reasons set forth above, Defendant's motion to compel arbitration is GRANTED. Because all of Plaintiff's claims must be submitted to arbitration, the court DISMISSES the action. See, e.g., Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) ("Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings."); ITT Indus., Inc. v. Werner Pump Co., No. 01-CV-8552 (GEL), 2001 WL 1658220, at *2 (S.D.N.Y. Dec. 27, 2001). The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

Dated: Brooklyn, New York
April 17, 2015

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge